**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

LOIS MUELLER,                                      )
                                                   )
           Plaintiff,                              )
                                                   )
           v.                                      )          No. 4:13-CV-2523 CAS
                                                   )
DENNIS J. BARTON, III, et al.,                     )
                                                   )
           Defendants.                             )

### MEMORANDUM AND ORDER

This is an action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq.

("FDCPA"), with supplemental state law claims for abuse of process and conversion.  The case is

before the Court on a motion to dismiss filed by remaining defendant Dennis J. Barton, III

("Barton"), for lack of subject matter jurisdiction under Rule 12(b)(1), Federal Rules of Civil

Procedure, and for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed.

R. Civ. P.  Barton asserts that the Rooker-Feldman doctrine[1] deprives the Court of subject matter

jurisdiction, and that plaintiff Lois Mueller's ("plaintiff") allegations fail to state a claim under the

FDCPA and state law.  Plaintiff opposes the motion and it is fully briefed.  For the following

reasons, the motion to dismiss for lack of subject matter jurisdiction will be denied, and the motion

to dismiss for failure to state a claim will be granted in part and denied in part.

### I. Background

The First Amended Complaint ("Complaint") alleges that Barton, an attorney, violated the

FDCPA in several different ways in connection with collection of a debt plaintiff owed to St.

---

[1]Under the Rooker-Feldman doctrine, lower federal courts lack jurisdiction to review a state court's final judicial determination.  District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

Anthony's Medical Center ("St. Anthony's") for medical services. In summary, plaintiff alleges that Barton, former defendant Roger Weiss, and former defendant Consumer Adjustment Company, Inc. ("CACi"), acquired her debt from St. Anthony's; that Barton filed suit against her in the Circuit Court of St. Louis County, Missouri (the "state court suit") in St. Anthony's name without disclosing Weiss and/or CACi's status as the real parties in interest, and entered into a consent judgment with plaintiff; and that Weiss or CACi later sold the debt to former defendant Senex Services Corp ("Senex"), which also began collection efforts even though plaintiff was making monthly payments to Barton under the consent judgment.[2]

More specifically, plaintiff alleges that Barton sent her a collection letter in October 2012 which stated that he represented St. Anthony's with respect to collection of $6,747.43, but the statement was false because St. Anthony's did not hire Barton and at all relevant times Barton was actually representing Weiss and CACi. Plaintiff alleges that the collection letter was on Barton's letterhead and appeared to be signed by him, but that Barton was not personally involved in drafting or signing the letter, and neither he nor another attorney in his office had personally reviewed plaintiff's file. Plaintiff also alleges the letter was deceptive and confusing because it did not inform her that Barton and CACi were actively assessing interest against plaintiff on the debt, did not include any safe harbor language informing plaintiff that as a result of accruing interest the balance would be higher on the date plaintiff received the letter, and failed to accurately state the amount of the debt because as of the date of the letter, the balance Barton was trying to collect was materially higher than the balance identified in the letter.

---

[2]Plaintiff settled her claims against defendants Weiss, CACi and Senex, and those parties were dismissed from the action.

Plaintiff alleges that the debt was assigned from St. Anthony's to Weiss or CACi before December 10, 2012, and the assignment document specified that CACi and/or Weiss were to file suit in their own name as assignee of the debt. Barton filed a petition in state court against plaintiff on December 10, 2012, naming only St Anthony's as the plaintiff even though St. Anthony's no longer owned the debt. Barton signed the petition as "Attorney for Plaintiff" even though, according to plaintiff, St. Anthony's did not hire Barton and Barton never actually represented St. Anthony's. Barton took a consent judgment against plaintiff in the state court suit in St. Anthony's name on January 14, 2013, and plaintiff alleges the judgment included interest charges not authorized by Missouri law or by the agreement between plaintiff and St. Anthony's.[3]

The consent judgment stated that execution would be stayed if plaintiff paid Barton $50 per month, and plaintiff alleges she has made the monthly payments starting in February 2013. Plaintiff alleges that when she appeared in court and talked with Barton, he told her the $50 payments would pay down the principal of the debt, and did not mention that most of the $50 payment would go toward the interest that was accruing on the debt. Plaintiff alleges that the consent judgment did not indicate interest would accrue on the debt while she was making the $50 payments, and appeared to indicate that interest would only accrue if the judgment were executed upon. Plaintiff further alleges she requested that Barton provide her with receipts for her payments, but he refused to do

---

[3]In the Complaint, plaintiff incorrectly alleges that the state court consent judgment was entered on February 5, 2013. According to records available on CaseNet, Missouri's online access to public court records, the judgment was entered on January 14, 2013. A court may take judicial notice of matters of public record, such as court records, without converting a motion to dismiss into a motion for summary judgment. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007). In addition, the state court petition on account and consent judgment were submitted by the parties as exhibits to the instant motion and are necessarily embraced by the Complaint, as their contents are alleged therein and no party questions their authenticity. See Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012). As a result, the petition on account and consent judgment are not matters outside the pleading and the Court considers them in connection with the motion to dismiss.

so in order to (1) hide that he was charging her a high rate of interest on the judgment, and (2) obscure that plaintiff's payments were not going to St. Anthony's, but instead were being kept by CACi and Barton.

Plaintiff also alleges that within a short time of obtaining judgment against her in the state court suit, Barton and/or CACi sold or transferred the debt to defendant Senex, but failed to inform Senex they had taken judgment on the debt and that plaintiff was paying on the judgment as agreed. Plaintiff alleges that in December 2013, long after she entered into and was paying on the consent judgment, Senex called her and sent her a collection letter, demanding that she pay the debt in full.

Plaintiff alleges she learned for the first time in December 2013 that Barton, contrary to his numerous prior representations, never actually represented St. Anthony's with respect to the debt he took steps to collect. Plaintiff also alleges that Barton filed the state court suit for the improper collateral purpose of harassing and intimidating her into paying a debt and/or related charges such as interest that she did not owe. Count I of the Complaint asserts that Barton's debt collection activities involved false representations and unfair practices in violation of several sections of the FDCPA. Counts II and III assert state law claims for abuse of process and conversion, respectively.

## II. Discussion

### A. The Court has Subject Matter Jurisdiction Over the Complaint

Barton first moves to dismiss plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P. The purpose of a Rule 12(b)(1) motion is to bring a threshold question of jurisdiction before the Court, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990). "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks and citation omitted). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." Osborn, 918 F.2d at 729. Barton does not challenge the factual allegations of plaintiff's Complaint under his 12(b)(1) motion, but supplements it with the state court suit petition and consent judgment. Thus, the second basis applies here.

Barton argues that the Court lacks jurisdiction over the Complaint in its entirety under the Rooker-Feldman doctrine because the relief she requests would effectively reverse the state court decision or void its ruling. Barton is incorrect. The Supreme Court has stated that Rooker-Feldman "is a narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006). "It applies only to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)." Riehm v. Engelking, 538 F.3d 952, 965 (8th Cir. 2008). "The doctrine does not apply to cases that raise independent issues." MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l. Ass'n, 546 F.3d 533, 539 (8th Cir. 2008) ("MSK").

The Rooker-Feldman doctrine does not bar plaintiff's claims premised on Barton's alleged improper activities in filing the state court suit and in collecting under the consent judgment. Although plaintiff complains of injuries caused by the state court suit and judgment, her claims do not seek review and rejection of that judgment. Plaintiff does not challenge the state court's issuance of the consent judgment or seek to have it overturned. The Eighth Circuit has explained the critical distinction between claims that attack the decision of a state court and those that attack an adverse party's actions in obtaining and enforcing that decision:

If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.

Riehm, 538 F.3d at 965 (cited case omitted).

Here, plaintiff's claims fall into the second category because they assert allegedly unlawful conduct committed by Barton, that does not require the Court to overturn the state court's judgment. Because the state court's judgment would still be intact even if Barton committed unlawful acts in obtaining and enforcing it, plaintiff's claims do not seek "review and rejection" of the judgment. See Exxon Mobil, 544 U.S. at 284. Also, "[i]t is possible to conclude [the defendant] committed various torts in enforcing the judgment without concluding the judgment itself is invalid." MSK, 546 F.3d at 539. Plaintiff's claims are independent and not barred by Rooker-Feldman because they allege unlawful conduct only 'in seeking and executing the [state] order.' Riehm, 538 F.3d at 965." MSK, 546 F.3d at 539. Barton's motion to dismiss for lack of subject matter jurisdiction will be denied.

B. Rule 12(b)(6) - Motion to Dismiss for Failure to State a Claim

1. Legal Standard - Rule 12(b)(6)

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This

obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted case omitted).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). "[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

### 2. FDCPA Claims

#### a) *Claims Based on the Initial Collection Letter are Time Barred*

Any action brought to enforce a provision of the FDCPA must be filed "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff alleges that defendant's initial collection letter dated October 22, 2012 violated the FDCPA because it was sent by a non-attorney, misstated the amount of the debt owed, and included Barton's misrepresentation that he

was St. Anthony's attorney. Complaint at 4-5. Barton moves to dismiss plaintiff's FDCPA claims based on the initial collection letter as time barred because the Complaint was filed over a year later, on December 19, 2013.

Plaintiff responds that her claims arising out of the initial collection letter are not time barred because the statute of limitations should be equitably tolled. In support, plaintiff argues that Mattson v. U.S. West Communications, Inc., 967 F.2d 259, 262 (8th Cir. 1992), does not preclude equitable tolling and, if it did, this Court should not follow it "in light of the persuasive arguments recognized by the other Circuits on this issue." Pl.'s Resp. at 20.

In Mattson, the Eighth Circuit stated, "We are not at liberty to disregard the jurisdictional limitations Congress has placed upon the federal courts, however appealing it might be to interpret section 1692k(d) in such a way as to permit [plaintiff's] action to proceed." 967 F.2d at 262. Several decisions of this Court as well as other district courts in the Eighth Circuit have read Mattson to hold that the FDCPA's statute of limitations is jurisdictional and cannot be equitably tolled. See Ness v. Gurstel Chargo, P.A., 933 F.Supp.2d 1156, 1165 (D. Minn. 2013); Harris v. Barton, 2014 WL 3701037, at *3 (E.D. Mo. July 25, 2014); McCarty v. Barton, 2014 WL 2958165, at *2 (E.D. Mo. July 1, 2014); Spriggs v. Hosto & Buchan PLLC, 2014 WL 221982, at *3 (E.D. Ark. Jan. 21, 2014). Because Mattson is binding precedent, the Court declines plaintiff's invitation to ignore it.[4]

---

[4]The Court recognizes that Mattson has been criticized by other courts, as Judge Fleissig observed in Harris v. Barton:

> Upon reflection, the Court questions whether . . . use of the word "jurisdictional" in [Mattson] was perhaps colloquial. The question of tolling was not before the Court, just the question of when the one year began to run. See Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 940 & n.14 (9th Cir. 2009) (holding that the one year limitations period was subject to equitable tolling, and remarking that the "jurisdictional" statement in Mattson "was made without any real analysis,

Equitable tolling only applies to cases where the statute of limitations is not a jurisdictional bar. See Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001). Because the limitations period of 15 U.S.C. § 1692k(d) is deemed jurisdictional in the Eighth Circuit, the Court does not address plaintiff's equitable tolling argument.[5]

Plaintiff also argues that even absent equitable tolling, her FDCPA claims based on the October 22, 2012 letter concerning interest nondisclosure and Barton's failure to disclose that he did not represent St. Anthony's are not time barred. Plaintiff contends that the limitations period began to run from the state court hearing date of January 14, 2013, as this was Barton's last chance to correct misrepresentations in the letter concerning the accrual of interest on the debt and his status as St. Anthony's attorney. In support of her argument, plaintiff cites cases articulating the general principle that the statute of limitations begins to run on the date of the last opportunity for a debt collector to comply with the FDCPA. Plaintiff does not, however, cite any legal authority to support

and we are unsure but what 'jurisdiction' was used in a somewhat colloquial sense"). The large majority of courts that have considered and analyzed the question have concluded that the one year period is subject to tolling. See, e.g., Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 327 (7th Cir. 2000); Clark v. Bonded Adjustment Co., 176 F.Supp.2d 1062, 1068 (E.D. Wash. 2001) (stating "the presumption that statutory time limits are not jurisdictional has not been rebutted by anything in the language or legislative history of the FDCPA"). This Court believes that, given the opportunity to consider the matter directly, the Eighth Circuit would agree with these courts.

Harris, 2014 WL 3701037, at *3. Mattson was also called into doubt in Mader v. United States, 619 F.3d 996, 1002-03 (8th Cir.), rev'd on other grounds, 654 F.3d 794 (8th Cir. 2010) (en banc). Mattson's continued vitality is an issue that can only be resolved by the Eighth Circuit.

[5]The Court notes that allegations a defendant acted fraudulently, or misrepresented something that led a plaintiff to sleep on his rights, have been held to warrant equitable tolling in FDCPA cases. See, e.g., Foster v. D.B.S. Collection Agency, 463 F.Supp.2d 783, 799-800 (S.D. Ohio 2006) (equitable tolling applied to FDCPA claim where defendant debt collection agency filed complaints in its own name rather than the name of the actual creditors, and the agency was not properly registered in Ohio and therefore did not have legal capacity to sue).

application of the principle in this case and the Court finds the argument unpersuasive in light of controlling precedent concerning the FDCPA statute of limitations with respect to collection letters. See Mattson, 967 F.2d at 261-62 (holding that the FDCPA limitations period begins to run on the date a challenged collection letter was mailed, and ends one day before the anniversary date of the mailing); Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 770 (8th Cir. 2001) (same).

For these reasons, the Complaint itself establishes that plaintiff's claims under the FDCPA based on the initial collection letter of October 22, 2012 are time barred and must be dismissed. This aspect of Barton's motion to dismiss will be granted.

### b) *Plaintiff's Claim Regarding the Amount of Interest*

#### *(1) State Court Petition*

Section 1692f(1) of the FDCPA prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

The Complaint alleges that (1) Barton falsely stated in the state court petition that a demand for $6,747.43 was made to plaintiff on November 9, 2012, and (2) plaintiff's agreement with St. Anthony's did not allow Barton to recover any interest, court costs, or attorneys' fees, so Barton's collection of interest on the debt was unlawful. Complaint at 7, ¶¶ 48-49, 51-52. The Complaint alleges that the total amount of the consent judgment was $7,269.23, which included improper interest charges. Id. at 8, ¶ 64.

Barton moves to dismiss this claim on the basis that the prejudgment interest was both disclosed and authorized. Barton argues that prejudgment interest is permitted under Missouri law, which allows creditors to collect "interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on

accounts after they become due and demand of payment is made." Mo. Rev. Stat. § 408.020 (2000). Barton argues that the state court petition's request for prejudgment interest did not violate 15 U.S.C. §§ 1692d-f because Missouri law allowed him (on behalf of St. Anthony's) to seek prejudgment interest, and he did not violate § 1692g by failing to disclose the amount of the debt by concealing interest charges because the petition expressly sought 9% prejudgment interest. Finally, Barton states that while plaintiff claims to have had an agreement with St. Anthony's, no agreement was attached to the complaint or described therein. Barton asserts that "any agreement was an oral one for service and silent on interest" and therefore under Missouri law, prejudgment interest is allowed.

Plaintiff responds that she has properly pleaded the amount of interest Barton assessed and collected against her was not authorized by Missouri law or the agreement between her and St. Anthony's, and as a result the Complaint states a claim under 15 U.S.C. § 1692f(1). Plaintiff states that Barton fails to address her factual allegation that he fabricated making a pre-suit demand on her on November 9, 2012, and asserts that his arguments concern the merits of her claim and not its sufficiency as pleaded. Plaintiff further responds that the Complaint alleges Barton was not authorized to collect interest on behalf of St. Anthony's because he was not St. Anthony's attorney, and St. Anthony's had no standing to sue plaintiff because it had assigned her debt.

Missouri law requires that a demand be made before prejudgment interest may begin to accrue. Mo. Rev. Stat. § 408.020. "Although the demand need be in no certain form, it must be definite as to amount and time." Nusbaum v. City of Kansas City, Mo., 100 S.W.3d 101, 109 (Mo. 2003) (en banc). Here, plaintiff's Complaint alleges that Barton falsely represented in the state court petition that a demand for payment was made on November 9, 2012. The Complaint also alleges that plaintiff had an agreement with St. Anthony's which did not allow Barton to recover

prejudgment interest, court costs or attorney's fees. These allegations are accepted as true on a motion to dismiss.

Missouri law does not authorize prejudgment interest in the absence of a demand, and it is a violation of the FDCPA to collect or attempt to collect any amount, including interest, unless "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Courts have concluded that the FDCPA applies to pleadings filed in state court actions. See, e.g., Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003) (complaint filed in state collection action subject to FDCPA); Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (same). Taking the facts alleged in the Complaint as true, plaintiff has pleaded facts showing entitlement to relief under the FDCPA. Barton's motion to dismiss plaintiff's claims concerning prejudgment interest as demanded in the state court petition will be denied.

*(2) State Court Consent Judgment*

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2)(A) prohibits the false representation of "the character, amount, or legal status of any debt[.]"

The Complaint alleges that the state court consent judgment stated its execution would be stayed if plaintiff paid Barton $50 per month, and that plaintiff made the $50 monthly payments starting in February 2013. The Complaint alleges that when plaintiff appeared in state court and talked with Barton, he indicated the $50 payments would pay down the principal of the debt and did not mention that most of the $50 payment would go toward the interest that was accruing on the debt. Plaintiff alleges that the consent judgment did not indicate interest would accrue on the debt while she was making the $50 payments, and appeared to indicate that interest would only accrue

if the judgment were executed upon. Plaintiff further alleges that she repeatedly asked Barton to provide her with receipts for her monthly payments, but he refused to do so in order to (1) hide that he was charging her a high rate of interest on the judgment, and (2) obscure that plaintiff's payments were not going to St. Anthony's, but instead were being kept by CACi and Barton.

Barton moves to dismiss on the basis that the consent judgment expressly included both prejudgment interest and statutory post-judgment interest at the rate of nine percent. Barton argues, without citation to any supporting legal authority, that even applying the "least sophisticated consumer" standard, plaintiff's interpretation of the consent judgment as appearing to indicate that interest would only accrue if the judgment were executed upon is "grossly inaccurate and defies logic." Mem. Supp. Mot. Dismiss at 8.

Plaintiff responds that she has pleaded Barton concealed from her that interest would continually drive up the balance of the judgment, which is a violation of the general prohibition against deception in § 1692e, and of the interest disclosure requirement in § 1692e(2)(A). Plaintiff cites decisions holding that to avoid mischaracterizing the amount of a debt, a collection letter must warn the consumer if late charges, interest and other fees will accumulate on the debt, increasing the actual balance due. Plaintiff argues that the logic of these cases applies "with equal force" to the consent judgment. Pl.'s Response at 5.

Barton replies that the consent judgment states on its face, "Judgment to bear interest at the rate of 9.000% per annum," so plaintiff had to know that interest would accrue. Barton also replies that post-judgment interest in Missouri is authorized by statute and accrues from the day judgment is entered pursuant to Mo. Rev. Stat. § 408.040, and cites Avenevoli v. Avenevoli, 712 S.W.2d 463, 464-65 (Mo. Ct. App. 1986), which rejected the argument that interest cannot begin to accrue on a judgment where execution of the judgment is stayed.

In the Eighth Circuit, whether a collection letter is false, misleading or deceptive in violation of 15 U.S.C. § 1692e is viewed through the eyes of the "unsophisticated consumer." Peters v. General Service Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (quoted case omitted). This test is meant to protect uninformed or naive consumers of "below average sophistication, [but] it also involves an element of reasonableness that prevents bizarre interpretations of debt collection notices." Volden v. Innovative Fin. Sys., Inc., 440 F.3d 947, 955 (8th Cir. 2006).

Assuming without deciding that the unsophisticated consumer test applicable to collection letters also applies to the consent judgment in this case, the Court cannot say as a matter of law that it is "bizarre" or defies logic for an uninformed consumer to believe interest would not accrue on a judgment that was stayed while she made monthly payments, particularly if she was told by the judgment creditor's attorney that her payments would go to the principal balance. Barton fails to cite any FDCPA decisions to support his argument, and it is not self proving. Further, Barton ignores plaintiff's allegation that he "indicated" to her the $50 payments would pay down principal, and did not tell her that interest would accrue. The Missouri post-judgment interest statute and the Avenevoli decision do not resolve the issue whether the consent judgment, alone or combined with Barton's alleged representations, were misleading or falsely represented the debt in violation of the FDCPA.

The Court concludes that plaintiff's claim with respect to the consent judgment asserts sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678. Barton's motion to dismiss plaintiff's FDCPA claims concerning the consent judgment will be denied.

The Complaint alleges that before the state court suit was filed, St. Anthony's assigned the alleged debt to former defendants Weiss and/or CACi, and that by virtue of the assignment, St. Anthony's was no longer the real party in interest for purposes of prosecuting plaintiff to collect the alleged debt. Complaint at 5-6, ¶¶ 38-39. The assignment document stated that Weiss and/or CACi were to file suit in their own name as assignee of the debt, and recited that the assignment was being completed pursuant to § 425.300, Mo. Rev. Stat. Complaint at 6, ¶¶ 40-41. Barton filed suit against plaintiff naming only St. Anthony's as the plaintiff and himself as its attorney. Id. at 7, ¶¶ 46, 53-54. Plaintiff asserts that these allegations constitute a violation of 15 U.S.C. § 1692e, which prohibits false or misleading representations, and 15 U.S.C. § 1692f, which prohibits unfair practices.

Barton moves to dismiss plaintiff's FDCPA claims to the extent they are based on the theory that St. Anthony's was not the real party in interest in the state court suit. Barton argues that plaintiff's allegations are inconsistent with Missouri law regarding a creditor's right to assign a claim only for billing and collection purposes, including collection litigation. In support, Barton cites Mo. Rev. Stat. § 425.300,[6] and Skaggs Regional Medical Center v. Powers, 419 S.W.3d 920 (Mo. Ct. App. 2014). Barton asserts that Skaggs held the plaintiff hospital "had standing as a real

---

[6]The statute provides:

> Collection agencies may take assignment of claims in their own name as real parties in interest for the purpose of billing and collection and bringing suit in their own and the claimant's names thereon, provided that no suit authorized by this section may be instituted on behalf of a collection agency in any court unless the collection agency appears by a duly authorized and licensed attorney at law. Upon good cause being shown, a court may sever any actions brought under this section.

Mo. Rev. Stat. § 425.300 (2000).

party in interest because assignments pursuant to § 425.300 are partial assignments, and [hospital] would receive part of the funds collected from a trial court judgment." Mem. Supp. Mot. Dismiss at 11.[7]

Plaintiff responds that the Complaint alleges Barton improperly identified St. Anthony's as the sole plaintiff in the state court suit for four reasons: (1) Barton did not represent St. Anthony's, (2) if St. Anthony's was named as a plaintiff in the suit, it had to be identified as the assignor and CACi as the assignee pursuant to Mo. Rev. Stat. § 425.300, (3) St. Anthony's had no standing to sue plaintiff because it sold the account to CACi before suit was filed, and (4) St. Anthony's had no standing to collect money from plaintiff because the debt was sold to Senex before Barton started taking money from plaintiff in St. Anthony's name. Plaintiff contends that Barton's arguments do not address the sufficiency of these allegations, but rather improperly address the merits of her claim. Plaintiff also argues that Barton only contests the issue of St. Anthony's standing, but fails to address the other three reasons she has pleaded as to why naming St. Anthony's as the sole plaintiff in the state court suit violated 15 U.S.C. § 1692e. Finally, plaintiff responds that Skaggs does not support Barton's argument, because it does not stand for the proposition that Mo. Rev. Stat. § 425.300 allows an assignee such as CACi to sue *only* in the assignor's name, and does not hold as a matter of law that *all* assignments under § 425.300 are partial assignments.

The Court agrees that Skaggs does not hold as a matter of law that all assignments under § 425.300 are partial assignments. In Skaggs, the court held that the plaintiff hospital's assignment of a patient's account to a collection agency under § 425.300 did not deprive it of standing to

---

[7]A copy of the assignment document from St. Anthony's to CACi and/or Weiss is attached to the Memorandum in Support of Barton's Motion to Dismiss. Reference to this document on a motion to dismiss might be appropriate as a matter embraced by the pleadings, but out of an abundance of caution the Court does not consider the assignment document on this motion.

subsequently sue the patient on the debt, *where the assignment was not an absolute assignment but rather was a partial assignment for collection*. 419 S.W.3d at 921, 922-23. The decision quoted the statute and the assignment in question, which stated it was "for the purposes of billing, collection, and bringing suit as the real party in interest in Assignee and Assignor's names." Id. at 920. The court discussed the general rule that an absolute assignment of an entire right or interest divests the assignor of all right or interest, and the assignee then becomes the real party in interest to any civil action, id. at 922, but concluded that in the case before it, the assignment for collection purposes was not an absolute assignment and therefore the hospital assignor retained standing to sue. Id. at 923. Thus, Skaggs does not hold as a matter of law that all assignments under § 425.300 permit the assignor to sue in its own name.

Here, the Complaint alleges that St. Anthony's assigned the debt to CACi and/or Weiss, and that the assignment document specified CACi and/or Weiss were to file suit in their own names as assignee of the debt. Whether the assignment from St. Anthony's to CACi and Weiss was a complete assignment, as the Complaint alleges, or a partial assignment for purposes of billing and collection as Barton argues, is not a question of law but rather is a factual matter that is not appropriate for resolution on a motion to dismiss.

In another FDCPA case filed against Barton based on a St. Anthony's debt, this Court stated that Barton's action of filing a state lawsuit solely in St. Anthony's name "could well have constituted a deceptive practice" under the FDCPA. Harris v. Barton, 2014 WL 3701037, at *3 (E.D. Mo. July 25, 2014). The Court concludes that plaintiff's claims based on Barton's action of filing the state court suit, obtaining a judgment and collecting on the judgment in St. Anthony's name assert sufficient factual matter, accepted as true, to state a plausible claim for relief under the

FDCPA.  See Iqbal, 556 U.S. at 678.  Barton's motion to dismiss these claims should therefore be denied.

>    d) *Plaintiff's Claims that Barton Violated the FDCPA by Falsely Stating*
>    *He Represented St. Anthony's*

The Complaint alleges that Barton told plaintiff that he was St. Anthony's attorney and designated himself as St. Anthony's attorney in the state court petition, Complaint at 7, ¶¶ 46, 53-54, but in reality Barton was not St. Anthony's attorney, it did not hire him, and did not authorize him to file suit against plaintiff.  Id., ¶¶ 56-57.  Plaintiff alleges that Barton took  judgment against her in St. Anthony's name and obtained the consent judgment by telling her he represented St. Anthony's.  Id. at 8, ¶¶ 61-62.  Plaintiff also alleges St. Anthony's general counsel stated in a letter that St. Anthony's "does not and has not employed Mr. Dennis J. Barton III nor does St. Anthony's Medical Center have or had any contractual relationship with Mr. Dennis J. Barton III."  Id. at 9, ¶¶ 66-67.  A copy of the letter is attached as an exhibit to the Complaint.  Plaintiff asserts that these allegations constitute a violation of 15 U.S.C. § 1692e, which prohibits false or misleading representations, and 15 U.S.C. § 1692f, which prohibits unfair practices.

Barton moves to dismiss these claims, asserting that even if they are taken as true plaintiff fails to state a claim upon which relief can be granted.  Barton's argument is as follows:  (1) CACi was authorized to file suit against plaintiff, (2) Mo. Rev. Stat. § 425.300 authorized CACi to file suit in the St. Anthony's name only; (3) CACi as a corporation could not file suit except through an attorney, (4) St. Anthony's implicitly authorized CACi to hire an attorney of its choice to file suit against plaintiff, and (5) CACi and Weiss hired Barton.  As a result, Barton asserts that he properly identified himself as St. Anthony's attorney.

Plaintiff responds that the Complaint alleges Barton was not, in fact, St. Anthony's lawyer and therefore Barton falsely told her that he represented St. Anthony's.  Plaintiff asserts that

18

Barton's argument attempting to controvert the Complaint's allegations and arguing that he really was St. Anthony's attorney raises a factual dispute that is out of place on a motion to dismiss. Plaintiff also asserts that Barton mischaracterizes the effect of § 425.300.

The Court agrees that Barton's argument fails to accept the allegations of the Complaint as true and raises issues of fact that are not appropriate for resolution on a motion to dismiss. The Court concludes the allegations that Barton falsely represented to plaintiff he was St. Anthony's attorney, accepted as true, plausibly state a claim for relief under 15 U.S.C. §§ 1692e and 1692f. Barton's motion to dismiss these claims will be denied.

### e) Plaintiff's Allegation that Barton Violated the FDCPA by Refusing to Provide Payment Receipts is not a Stand-Alone Claim

The Complaint alleges that plaintiff repeatedly asked Barton to provide her with receipts for the monthly $50 payments, but Barton refused to do so, in order to hide the fact that interest was being charged and that the payments were not going to St. Anthony's but rather were being kept by Barton. Barton moves to dismiss for failure to state a claim, asserting that the FDCPA does not create a duty to provide a receipt after a consumer has made a payment.

Plaintiff responds that her Complaint does not plead Barton's refusal to provide payment receipts as a stand-alone cause of action under the FDCPA, but rather alleges that Barton violated the FDCPA by "scheming" plaintiff into believing her $50 payments were being applied to principal only. Plaintiff states that her allegations concerning Barton's failure to provide receipts is included as background information for that claim.

Based on plaintiff's representation, the Court will deny this aspect of Barton's motion to dismiss as moot.

*f)* *Plaintiff's Claim that Barton Violated the FDCPA by Allowing Former Defendant Senex to Attempt to Collect on Plaintiff's Debt*

Barton moves to dismiss plaintiff's FDCPA claims against him that concern Barton allowing former defendant Senex to attempt to collect on plaintiff's debt. Barton states that the Complaint alleges former defendant Weiss facilitated the transfer of plaintiff's debt to Senex, Complaint at 6, ¶ 43, and then alleges that Barton "knew or should have known that Senex would be collecting on plaintiff's debt and that the efforts of Weiss, CACi, and Barton to collect on the debt would be duplicative and not necessary." Id., ¶ 44. Barton argues that plaintiff never alleges facts showing he had any knowledge that Weiss transferred the debt to Senex, but leaps to the conclusion in paragraph 44 that Barton knew or should have known Senex would be collecting on the debt. Barton states the Complaint then alleges that he and/or CACi actually sold or transferred the debt to Senex, that he and Weiss had the power to prevent the debt from going to Senex but failed to do so, id. at 10, ¶¶ 80-81, and that Barton violated the FDCPA by "[a]llowing Senex to collect on the debt even though Barton, Weiss, and CACi were actively collecting the debt, 15 U.S.C. § 1692d-f." Id. at 13, ¶ 100E. Barton argues that the Complaint does not establish his control or authority over Senex, or allege that he had any professional relationship or connection with Senex. Barton describes plaintiff's allegations are "baseless legal conclusions that are insufficient to state a claim." Mem. Supp. Mot. Dismiss at 14.

Barton also argues that plaintiff's claim against him regarding Senex fails because his client, St. Anthony's, is the "only correct and valid judgment creditor," as the Complaint admits plaintiff's debt was sold to Senex *after* the judgment was entered on January 14, 2013. Barton argues that as a result, St. Anthony's still owned the debt when the judgment was entered and under Missouri law is the only party entitled to the judgment proceeds unless and until it assigns the judgment pursuant to Mo. Rev. Stat. § 511.690. Barton asserts that even if Senex purchased the debt after the judgment

was entered, it would have to seek the money from the judgment creditor, St. Anthony's, and not plaintiff. Barton concludes that as a result, plaintiff fails to state a claim against him for allowing Senex to attempt to collect on her debt.

Plaintiff responds that she pleads a viable FDCPA claim for violations of §§ 1692d-f by describing in her Complaint how Barton attempted to collect on the debt after it was the property of Senex. Plaintiff states she alleged that CACi sold or transferred the debt to Senex shortly after Barton took the consent judgment, Complaint at 6, ¶¶ 43-45, at 10, ¶¶ 80-82, and that Barton was CACi's agent for the collection of plaintiff's debt. Id. at 2-3, ¶¶ 10-18. Barton and CACi knew of the sale of plaintiff's debt to Senex, id. at 3, ¶¶ 16-17, at 10, ¶¶ 43-45, but despite knowing that CACi no longer had an interest in plaintiff's debt, Barton continued to accept plaintiff's monthly payments in an attempt to double-collect on the debt. Id. at 3, ¶¶ 18, at 10, ¶¶ 44-45. Barton and CACi had the power to inform Senex they had already taken judgment against plaintiff and that she was paying as agreed, but failed to do so and instead allowed Senex to begin its collection efforts while simultaneously continuing their own. Id. at 10, ¶¶ 81-82.

Plaintiff argues that Barton would be liable for collecting a debt his employer had sold even if he had no knowledge of the sale because the FDCPA imposes strict liability, citing Royal Financial Group, LLC v. Perkins, 414 S.W.3d 501, 505 (Mo. Ct. App. 2013). Plaintiff asserts that Barton's knowledge of the sale to Senex is not a necessary predicate to his liability under the FDCPA. Plaintiff states she alleged in the Petition that Barton *knowingly* attempted to collect a debt CACi no longer owned to demonstrate the unconscionable tactics Barton employed in collecting her debt.[8]

_____

[8]Plaintiff also states that the allegations of her Complaint were not intended to establish that Barton controls Senex, but rather to demonstrate that he had knowledge of the CACi-Senex agreement.

Plaintiff further responds that Barton's argument for dismissal is based on the incorrect factual premise that St. Anthony's still owned plaintiff's debt at the time the state court judgment was entered, and is an improper merits-based argument.

The Court agrees that Barton's argument for dismissal addresses the merits of plaintiff's claim, and is based on the necessary factual foundation that St. Anthony's owned plaintiff's debt when the state court consent judgment was entered. The Complaint, however, alleges that St. Anthony's sold the debt to Weiss and/or CACi prior to entry of the consent judgment, and that allegation must be accepted as true for purposes of a motion to dismiss. As a result, Barton's entire argument collapses.

The Complaint alleges that Barton attempted to collect plaintiff's debt after it was sold to Senex. This allegation is sufficient to plausibly state a claim for relief under Sections 1692d-f, because the FDCPA is a strict liability statute that does not require a consumer to show intentional conduct by a debt collector to establish a violation. See Mayhall v. Berman & Rabin, P.A., 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014); see also Picht v. John R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001) (FDCPA is a strict liability statute). Barton's motion to dismiss this aspect of plaintiff's FDCPA claim will be denied.

### 3. Abuse of Process Claim

Count II of the Petition asserts a claim for the state law tort of abuse of process. The Complaint alleges that Barton filed the state court suit, obtained a judgment against plaintiff, and executed on the judgment for the improper collateral purpose of compelling plaintiff "to pay a debt or charges related to the debt" that she did not owe or, in the alternative, for the improper collateral purpose of compelling plaintiff "to pay more than she could legally owe with respect to the debt," or "solely to harass and intimidate" plaintiff. Complaint at 14, ¶¶ 103-106.

Barton moves to dismiss, arguing that plaintiff fails to state a claim for abuse of process because she has not pleaded facts to show the state court suit was used to accomplish any collateral or ulterior purpose other than collecting unpaid debt, which is the legitimate function of a petition on account. Barton states that the "test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is outside the regular purview of the process.'" Nichols v. Harbor Venture, Inc., 284 F.3d 857, 861 n.4 (8th Cir. 2002) (quoting Ritterbusch v. Holt, 789 S.W.2d 491, 493 n.1 (Mo. 1990) (en banc)). Barton describes the Petition's allegations of improper collateral purpose as legal conclusions the Court is free to ignore on a motion to dismiss.

Plaintiff responds that she has pleaded all of the elements of an abuse of process claim, because she alleges that Barton used legal process for one or more improper collateral purposes, including:

> (1) to force Plaintiff to pay a debt or additional charges on the debt that she did not owe; (2) to force Plaintiff to pay on a debt that the named plaintiff in the Lawsuit had no interest in collecting; (3) to dupe Plaintiff into believing that the original creditor, St. Anthony's, was suing her and not CACi, a mere debt collector; (4) to obtain a judgment against Plaintiff in the name of St. Anthony's when it was impossible to do so under the law because St. Anthony's was not Barton's client and never hired him to sue Plaintiff; and (5) to harass and intimidate Plaintiff.

Pl.'s Response at 28.[9] Plaintiff also alleges that she suffered damage as a result. Plaintiff argues that the collateral purposes she pleads are not authorized or warranted by the processes invoked, particularly her allegation that the processes were used solely to harass and intimidate her, because that is not a legitimate objective in the proper employment of process. Plaintiff further argues that

---

[9]The Court notes that the alleged collateral purposes listed as (2), (3) and (4) in plaintiff's Response quoted above are included in the factual allegations of her Complaint, but are not pleaded as being improper collateral purposes in the abuse of process count. The Court will only consider the alleged collateral purposes that are actually pleaded.

her allegation Barton's sole purpose in filing the lawsuit was to harass and intimidate her asserts a fact, and is not a legal conclusion.

"There are three elements that a successful plaintiff must prove to succeed on a claim for abuse of process under Missouri law: '(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted.' Stafford v. Muster, 582 S.W.2d 670, 678 (Mo. 1979) (en banc)." Nichols, 284 F.3d at 861 n.4. The test is "whether the process has been used to accomplish some end which is outside the regular purview of the process." Ritterbusch, 789 S.W.2d at 493 n.1.

A claim for abuse of process "is not appropriate where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim. It is where the claim is brought not to recover on the cause of action stated, but to accomplish a purpose for which the process was not designed that there is an abuse of process." Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 862 (Mo. Ct. App. 2000), abrogated on other grounds by Ellison v. Fry, __ S.W.3d __, 2014 WL 4086480, at **5-6 (Mo. Aug. 19, 2014) (en banc). The Eighth Circuit has quoted a leading treatise on tort law to explain the nature of abuse of process claims:

> The use of process "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation rather than the issuance or any formal use of the process itself, which constitutes the tort." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed. 1984).

Nitcher v. Does, 956 F.2d 796, 800 n.5 (8th Cir. 1992) (applying Missouri law). In Nitcher, the prisoner plaintiff's filing of a lawsuit for the unwarranted purpose of attempting to escape from

prison was held to constitute abuse of process. Another case illustrating an abuse of process is Ritterbusch, 789 S.W.2d at 492, in which the defendant unsuccessfully attempted to extort payment of a civil claim against the plaintiff by filing a criminal complaint against him in municipal court, alleging that Ritterbusch had maliciously damaged an automobile.

The fact that plaintiff allegedly owed a debt to St. Anthony's for medical services and that Barton filed a petition on account does not necessarily mean the state court suit cannot constitute an abuse of process:

> [A] suit can be wrongful even if it is not groundless, if the aim is something other than a judgment, such as bankrupting the defendant or destroying his reputation or distracting him from his other pursuits or simply immiserating him. Such a suit is an abuse of process. See, e.g., Heck v. Humphrey, 512 U.S. 477, 486 n. 5 (1994); Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 626 F.3d 958, 963 (7th Cir. 2010); National City Bank v. Shortridge, 689 N.E.2d 1248, 1252 (Ind. 1997); Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, The Law of Torts § 594, pp. 410–28 (2d ed. 2011).

West v. West, 694 F.3d 904, 906 (7th Cir. 2012).

Here, plaintiff alleges that Barton used legal process to compel her to pay a debt or charges related to the debt that she did not owe, to pay more than she legally owed with respect to the debt, or solely to harass and intimidate her. The issue is whether plaintiff has alleged that Barton used legal process for a purpose for which it was not designed. See Misischia, 30 S.W.3d at 862. The Court finds that she has. Certainly, the factual allegation that Barton filed the suit solely to harass and intimidate plaintiff alleges an improper collateral purpose. It is also possible that filing a suit with the aim of coercing the defending party to pay charges she did not owe or to pay more than she owed might be an improper collateral purpose. Barton fails to cite any illustrative case law to support his assertion that plaintiff's factual allegations do not rise to the level of an improper collateral purpose, and therefore fails to establish that dismissal is appropriate.

Under Rule 8(a)(2), "A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable, even if the complaint 'strikes a savvy judge that actual proof of the facts alleged is improbable' and recovery 'very remote and unlikely.'" Hamilton v. Palm, 621 F.3d 816 (8th Cir. 2010) (quoting Braden v. Wal-Mart Stores, 588 F.3d 585, 594 (8th Cir. 2009)). Plaintiff has plausibly pleaded a claim for abuse of process. Barton's motion to dismiss this claim will be denied.

### 4. Conversion Claim

Count III of the Petition asserts a claim for the state law tort of conversion. Plaintiff alleges that Barton converted an "identifiable fund, $500 in cash" from her, for the specific purpose of satisfying a debt and/or judgment he knew or should have known was invalid, and did so using the false pretenses of identifying himself as the lawyer for St. Anthony's. Complaint at 15, ¶¶ 111-12. Plaintiff alleges that if she had known Barton was not St. Anthony's attorney, she would not have given him the money. Id., ¶ 113. Plaintiff also alleges that Barton garnished her wages. Id., ¶ 117.[10]

Barton moves to dismiss, arguing that conversion is generally not a proper theory of recovery when a claim involves money, as opposed to personal property, citing Gadberry v. Bird, 191 S.W.3d 673, 675-76 (Mo. Ct. App. 2006). Barton argues that because the Complaint alleges only that he converted money plaintiff gave him as payments related to the judgment, and did not allege the money was misappropriated from one purpose to another, see Johnson v. GMAC Mortgage Corp., 162 S.W.3d 110, 125 (Mo. Ct. App. 2005), it fails to state a claim for conversion. Barton also

---

[10]The Court questions whether this allegation was intended to be included in the Petition. Paragraph 117 contains the first mention of any garnishment of plaintiff's wages, and refers to the entry of a default judgment against plaintiff, as opposed to the consent judgment that was actually entered in the underlying state court case.

argues that money obtained as payment for a valid judgment does not give rise to the tort of conversion, citing Petsche v. EMC Mortgage Corp., 830 F.Supp.2d 663, 673 (D. Minn. 2011).

Plaintiff responds that when the Complaint is read liberally, she has properly pleaded the elements of conversion because she alleges Barton took $500 from her for the specific purpose of satisfying the judgment taken on behalf of St. Anthony's, used false pretenses to obtain the $500 by misrepresenting that he was St. Anthony's attorney, and did not use the $500 for the supposedly legitimate purpose of paying down the judgment but instead simply kept the money.

Plaintiff further responds, contrary to the allegations of her Complaint that Barton kept the $500 for himself, that Barton "used Plaintiff's money for a purpose other [than] the one she specifically intended, namely, to satisfy a proper judgment. Instead, he used those funds for another purpose–as payment for a judgment obtained by misrepresentation." Pl.'s Response at 29-30.

Barton asserts in his Reply that plaintiff fails to state a claim for conversion because her allegation is that he collected the $500 from her for the purpose of satisfying the consent judgment. Barton then argues that the consent judgment is valid and St. Anthony's is the judgment creditor. Barton also asserts that plaintiff has not sufficiently alleged that she suffered any damage, arguing:

> If [St. Anthony's] is not receiving the money because CACi and/or [Barton] have retained all of it or did something else with it in violation of any agreement between the parties, then [St. Anthony's] has standing to bring a claim, not Plaintiff. Plaintiff makes no allegation that her debt remains the same or that [St. Anthony's] has filed another suit because it did not receive the money relating to the Judgment. Absent any alleged facts similar to those, Plaintiff has not sufficiently pleaded facts necessary to state a claim for conversion.

Reply at 18.

Under Missouri law, conversion is the unauthorized assumption and exercise of ownership rights over the personal property of another party to the exclusion of the owner's rights. IOS Capital, LLC v. Allied Home Mortg. Capital Corp., 150 S.W.3d 148, 152 (Mo. Ct. App. 2004)

(citation omitted).  To establish a claim for conversion, a plaintiff must show that: (1) the plaintiff was the owner of the property or was entitled to possession of the property, (2) the defendant took possession of the property with the intent to exercise some control over it, and (3) the defendant thereby deprived the plaintiff of the right to possession of the property.  Id. at 153.  Conversion is "generally is not a proper [legal] theory where the claim involves money, as opposed to a specific chattel."  Johnson, 162 S.W.3d at 125 (cited case omitted).  This principle, however, "is subject to a 'narrow exception' in cases where the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant."  Id. (cited case omitted).

Here, the conversion count alleges that (1) plaintiff delivered payments totaling $500 to Barton as the putative attorney for St. Anthony's, in partial satisfaction of the consent judgment, Complaint at 15, ¶ 111; (2) Barton misrepresented himself to plaintiff as St. Anthony's attorney to obtain the $500, id., ¶ 112; (3) if plaintiff had known Barton was not St. Anthony's attorney, she would not have given him the $500, id., ¶ 113; (4) Barton had no right to take plaintiff's money, id., ¶ 116, or to garnish plaintiff's wages because the judgment was invalid as Barton misrepresented his status as the attorney for St. Anthony's, id., ¶ 117; and (5) Barton's conversion of the $500 caused plaintiff to suffer damage, "including harming her financial position, causing him [sic] to lose money, damaging his [sic] credit, and suffering stress and anxiety."  Id., ¶ 118.  Separately, in the "Facts" portion of the Complaint, plaintiff alleges that her $50 payments did not go to St Anthony's and instead Barton kept them for himself.  Id. at 10, ¶ 79.  This allegation is incorporated by reference into the conversion count.

The conversion count is not a model of pleading clarity.  The Court is unsure whether plaintiff is alleging that Barton took the $500 for himself, or that he applied the $500 toward a

judgment that plaintiff claims is invalid. If the Complaint is read liberally and somewhat selectively to allege that plaintiff gave Barton $500 for the specific purpose of applying it toward satisfaction of the consent judgment, but Barton instead diverted the money and kept it for his own use, then the allegations meet the <u>Johnson</u> exception and state a claim for conversion. In contrast, plaintiff's inconsistent argument that Barton converted the $500 by using it to pay an invalid as opposed a valid judgment (as opposed to keeping it for himself) does not state a claim for conversion. The intent of the conversion count is muddied by the allegations that Barton falsely represented himself as St. Anthony's attorney to obtain the $500 from her, and that the judgment was invalid because of Barton's misrepresentation, as these facts do not directly address the elements of the cause of action.

As a result, Barton's motion to dismiss the conversion count will be granted, but plaintiff will be granted leave to amend the Complaint to replead this count if there is factual support for it. Plaintiff should omit any incorrect or inapplicable factual allegations from the conversion count if she elects to amend it.

## IV. Conclusion

For the foregoing reasons, defendant Barton's motion to dismiss for lack of subject matter jurisdiction will be denied. Barton's motion to dismiss for failure to state a claim will be granted as to plaintiff's FDCPA claims based on the initial collection letter dated October 22, 2012, and denied as to all other aspects of the FDCPA claims. The motion to dismiss will be denied as to plaintiff's abuse of process claim and granted as to the conversion claim. Plaintiff will be granted leave to amend her Complaint with respect to the conversion claim. Barton's motion for protective order and to stay discovery, which was premised on the pendency of the motion to dismiss, will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Barton's motion to dismiss is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to plaintiff's FDCPA claims arising from the initial collection letter of October 22, 2012, and **DENIED** as to the remaining FDCPA claims; the motion is **DENIED** as to the abuse of process claim and **GRANTED** as to the conversion claim. [Doc. 40]

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint within ten (10) days of the date of this Memorandum and Order, to replead the conversion claim if she elects to do so. Any amended complaint will completely replace the First Amended Complaint, and shall conform to all rulings contained in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Barton's Motion for Protective Order and to Stay Discovery is **DENIED**. [Doc. 58]

An appropriate order of partial dismissal will accompany this Memorandum and Order. If plaintiff does not file a second amended complaint as permitted herein, the Court will issue an amended order of partial dismissal to include the conversion claim.


_____

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this _12th_ day of September, 2014.